UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BLEAU FINSTER,

    Plaintiff,

vs.                                                     Case No.  3:15-cv-1044-J-34MCR

U.S. BANK NATIONAL ASSOCIATION,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant's Motion to Compel Deposition (the "Motion"), wherein Defendant seeks to depose the corporate representative of Alliance Legal Group, PL ("Alliance"), one of the law firms representing Plaintiff in the instant lawsuit.  (Doc. 54.)  Plaintiff filed a response in opposition to the Motion (Doc. 59) and the matter is ripe for review.  For reasons discussed herein, the Motion is due to be **DENIED**.

**I.    BACKGROUND**

This case arises out of Plaintiff's home mortgage loan and alleged permanent modification of payments on the loan.  Defendant services Plaintiff's mortgage loan.  Plaintiff asserts claims against Defendant for allegedly violating the Real Estate Settlement Procedures Act ("RESPA") and the Florida Consumer Collection Practices Act ("FCCPA"), while servicing her mortgage loan.  More specifically, Plaintiff alleges that Defendant forwarded her a set of documents for

execution that included a permanent loan modification agreement. (Doc. 48 at 4.) Plaintiff further alleges that she executed the permanent loan modification agreement, returned the executed agreement to Defendant, and made payments pursuant to the permanent loan modification agreement. (*Id.*) Subsequently, Defendant determined that the permanent loan modification agreement was executed in an "un-recordable" format, rejected Plaintiff's payments on the loan, terminated the agreement, and brought foreclosure proceedings against Plaintiff. (*Id.* at 4-6.) Plaintiff alleges that she then sent three separate "Notices of Error" to Defendant, thereby invoking the error resolution procedures mandated by RESPA. (*Id.* at 6.) Plaintiff alleges in Count I of the Third Amended Complaint that Defendant violated RESPA by failing to correct the errors or by failing to conduct a reasonable investigation and providing her with a written notification of the determination that no error occurred. (*Id.* at 7-8.) Count Two alleges that Defendant violated the FCCPA by attempting to "repudiate the loan modification without notifying Plaintiff of the asserted clerical errors that it contends rendered the permanent loan modification agreement un-recordable or attempting to obtain corrected documents." (*Id.* at 9.)

On September 9, 2016, Defendant served a non-party subpoena on Alliance. (Doc. 54-2.) The subpoena requests seven (7) categories of documents and requests the deposition of Alliance's corporate representative on nine (9) specific subjects. Defendant unilaterally scheduled the deposition to

occur on September 22, 2016, the final day of the discovery period.  (*See* Doc. 24 at 1.)  Defendant seeks to compel the deposition of Alliance's corporate representative "regarding Alliance's intake procedures, communications with [Defendant] regarding Plaintiff's modification, and the production and authentication of Plaintiff's loan modification documents in its possession." (Doc. 54 at 2.)

Plaintiff's counsel objects to the deposition of Alliance as such deposition would necessarily involve questioning Plaintiff's current legal counsel.  Plaintiff contends that Defendant cannot meet the exacting standard required in order to compel the deposition of a party's attorney in a case.  Plaintiff argues that there are alternative methods for obtaining the information sought by deposition.  Plaintiff further asserts that the information sought is not crucial to the issues presented in this case.  Defendant contends that the information sought is relevant and crucial to the issues in the case and that the deposition of Plaintiff's counsel is necessary.

## II.     DISCUSSION

### A.     Standard for Attorney Depositions

"[T]he depositions of attorneys who represent parties in an action are an invitation to harass the attorney and the party, to cause delay, and to disrupt the case." *LaJoie v. Pavcon, Inc.*, No. 97-cv-312-CIV-FtM-25D, 1998 WL 526784, at *1 (M.D. Fla. June 24, 1998) (citations omitted).  Thus, while nothing in the

Federal Rules of Civil Procedure prohibits the deposition of a party's attorney, "federal courts generally disfavor such depositions and permit them in only limited circumstances." *Covington v. Walgreen Co.*, No. 1:11-cv-22900, 2012 WL 2120776, at *3 (S.D. Fla. June 11, 2012) (citations omitted).

Here, the parties agree that this matter is governed by the standard set forth in *Axiom Worldwide, Inc. v. HTRD Group Hong Kong Ltd.*, No. 8:11-cv-1468-T-33TBM, 2013 WL 230241, at *3-4 (M.D. Fla. Jan. 22, 2013). (*See* Doc. 54 at 5 (setting forth the *Axiom* factors as the governing standard), 6 ("The Court should allow U.S. Bank to take the deposition of a Rule 30(b)(6) representative of Alliance because the proposed discovery satisfies each of the *Axiom* factors."); Doc. 59 at 3.) In other words, the parties agree that in order to take the deposition of Alliance's corporate representative, Defendant must show that: (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and non-privileged, (3) the information is crucial to the preparation of the case, and (4) the movant's needs outweigh the dangers of deposing the party's attorney. *Axiom*, 2013 WL 230241 at *3-4.

### B.    Satisfaction of Requirements

Defendant asserts that the information sought is relevant and crucial to the preparation of the case. Defendant asserts that a critical issue in this case is which party "embedded" stickers into the loan modification agreement that was signed by Plaintiff. According to Defendant, "[i]f Plaintiff, or Plaintiff's attorneys,

photocopied the stickers, then U.S. Bank was justified in rejecting Plaintiff's modification because Plaintiff did not properly execute and, thus, accept the loan modification." (Doc. 54 at 3.)  Defendant further asserts that it is crucial to its preparation of the case to determine whether Plaintiff's counsel received Defendant's "messages and correspondence regarding re-signing the loan modification documents," and how Plaintiff's counsel responded to Defendant's communications.  (*Id.* at 6.)  Defendant states that Alliance has sole knowledge of these issues and, therefore, the information cannot be obtained by alternative means.  The undersigned disagrees and finds that Defendant has failed to meet the *Axiom* standard.

      The information sought by Defendant is of questionable relevance and is certainly not crucial to the preparation of the case.  Plaintiff has asserted RESPA and FCCPA claims in this case.  As noted in *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016), correspondence from a borrower notifying the servicer of an error "triggers present RESPA obligations with respect to past error."  Under RESPA, the servicer must respond to the notice of error by either correcting the error and providing the borrower with a written notification of the correction, or conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that no error occurred.  *See* 12 C.F.R. § 1024.35(e).  Plaintiff alleges that Defendant failed to comply with RESPA *after* she sent Notices of Error.  (Doc. 48 at 8 ("Servicer has

unreasonably failed to correct this error in response to Plaintiff's multiple Notices of Error . . . [N]o reasonable investigation could support Servicer's conclusion that 'no error occurred.'").)  As such, information regarding what happened prior to sending Notices of Error invoking RESPA's error resolution procedures (i.e., whether the stickers were embedded in the original loan modification agreement by Plaintiff or Defendant) is not crucial to the preparation of the case.

Moreover, RESPA specifies that the *servicer* must respond to a notice of error by correcting the error (with written notice to the borrower) or conducting a reasonable investigation (with written notice that it determined that no error occurred).  *See* 12 C.F.R. § 1024.35(e).  It is unclear, then, why Alliance's (or Plaintiff's counsel's) actions are crucial to its defense.  *Cf. Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-cv-4587 LB, 2015 WL 19681124, at *11 (N.D. Cal. May 1, 2015) ("Requiring Plaintiffs to provide all of the documentation regarding the errors impermissibly shifts the burden to conduct a reasonable investigation from the servicers (where the regulation puts it) to the borrower."). Defendant has not cited any legal authority establishing that Alliance's actions with respect to Defendant's communications are critical to the preparation of the case.  *Cf. Graff v. Hunt & Henriques*, No. C 08-0908JF(PVT), 2008 WL 2854517, at *1 (N.D. Cal. July 23, 2008) ("Defendants claim they also need the deposition to determine *why* Plaintiff's counsel failed to respond to the March 26, 2007 letter . . . Defendants have cited no legal authority establishing that the reasonableness of

counsel's *motive* for not responding is in any way relevant to this action.") (emphasis in original); *see also* 12 C.F.R. § 1024.35(e)(2) ("A servicer may request supporting documentation from a borrower in connection with the investigation of an asserted error, but may not . . . [d]etermine that no error occurred because the borrower failed to provide any requested information without conducting a reasonable investigation."). Similarly, Defendant failed to show how the deposition of Alliance is crucial to the preparation of the case with respect to Plaintiff's FCCPA claim. The focus of the claim appears to be on *Defendant's* knowledge of the information. *See* F.S.A. § 559.72(9) (providing that no person may "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist").

It is important to note that although Defendant emphasizes in its memorandum the importance of obtaining information regarding whether Plaintiff's counsel received Defendant's "messages and correspondence," and how Plaintiff's counsel responded to Defendant's "communications" (Doc. 54 at 6), it appears undisputed that such "communications" were limited to Defendant leaving two voice mail messages with Alliance employee Renee Cook and sending a new loan modification agreement to Alliance (whereby receipt was verified) without any written explanation indicating that the initial, executed

agreement was insufficient .[1]  (*See* Doc. 59-1.)  Defendant's desire to find out what happened to two voice mail messages and an unexplained, re-sent loan modification package is "too slim of a reed to support the extreme step of taking the deposition of [Plaintiff's] attorney."  *Covington*, 2012 WL 2120776 at *4.

Finally, the timing of the request belies Defendant's argument that the information is crucial and necessary to the case.  Defendant unilaterally scheduled Alliance's deposition to occur on the last day of the discovery period, leaving no room for further discovery (or dispute resolution) on a purportedly crucial issue.  It does not appear that Defendant attempted to obtain such information through alternative means (e.g., a request for production other than the duces tecum deposition request).  Subsequent to filing the Motion, Defendant did not seek to extend case deadlines in order to receive the information requested in the Motion, but rather filed a motion for summary judgment on Plaintiff's claims without such information.  (*See* Doc. 65.)  Defendant falls short of showing its request meets the *Axiom* standard.

### III.   CONCLUSION

Accordingly, it is **ORDERED**:

The Motion (**Doc. 54**) is **DENIED**.

---

[1] It appears that Defendant claims it sent an email to Plaintiff explaining the executed loan modification agreement was "un-recordable."  However, it does not appear that Defendant has produced such email in discovery.  In any event, Defendant and/or Plaintiff should be able to address the email.

**DONE** and **ORDERED** at Jacksonville, Florida, on October 31, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record