**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BLEU FINSTER,

       Plaintiff,

                                Case No. 3:15-cv-1044-J-34MCR

vs.

U.S. BANK NATIONAL ASSOCIATION,

       Defendant.

_____/

# O R D E R

    **THIS CAUSE** is before the Court on two motions.  On August 8, 2016, Defendant U.S. Bank National Association (U.S. Bank) filed a Motion to Dismiss Third Amended Complaint (Doc. 49; Motion to Dismiss), to which Plaintiff Bleu Finster responded on August 26, 2016, see Plaintiff Bleu Finster's Response in Opposition to Defendant U.S. Bank National Association's Motion to Dismiss Third Amended Complaint (Doc. 50; Response to MTD).  In addition, on October 18, 2016, U.S. Bank filed Defendant's Motion for Final Summary Judgment (Doc. 65; Summary Judgment Motion).  Plaintiff filed a response in opposition to the Summary Judgment Motion on November 14, 2016.  See Plaintiff Bleu Finster's Response in Opposition to Defendant U.S. Bank National Association's Motion for Summary Judgment (Doc. 69; Response to MSJ).  For the reasons set forth below, the Court finds that U.S. Bank is entitled to summary judgment in its favor, and therefore, the Court will deny the Motion to Dismiss as moot.[1]

---

[1] In addition, on November 28, 2016, U.S. Bank filed a motion to strike the Affidavit of David C. Hicks.  See Defendant's Motion to Strike Affidavit of David C. Hicks (Doc. 73; Motion to Strike).  Finster submitted the Hicks Affidavit as evidence in opposition to U.S. Bank's Summary Judgment Motion.  See Response to MSJ, Ex. A.  Because the Court finds that U.S. Bank is entitled to summary judgment regardless of whether the

## I.      Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[2]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

---

Court considers the Hicks Affidavit, as discussed further below, the Court will deny the Motion to Strike as moot.

[2] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## II.   Background[3]

On March 29, 2006, Plaintiff Bleu Finster executed a Note and Mortgage as part of the purchase of real property in Duval County, Florida. See Summary Judgment Motion, Ex. 1: Affidavit of Shanan Owen (Owen Aff.), Ex. A. The investor on the loan is the Federal National Mortgage Association (Fannie Mae). See Response to MSJ at 5 (citing Excerpt of June 24, 2016 Deposition of Shanan Owen (Doc. 67-1) at 9).[4] Although Finster disputes whether U.S. Bank was validly assigned the Note and Mortgage, compare id. at 5 with Motion for Summary Judgment at 4 (citing Owen Aff. ¶ 6, Ex. B), it is undisputed that U.S.

---

[3] As discussed above, because this case is before the Court on U.S. Bank's Summary Judgment Motion, the facts recited herein and all reasonable inferences therefrom have been viewed in a light most favorable to Finster. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

[4] The Court notes that Finster cites to excerpts from the June 24, 2016 Deposition of Shanan Owen located in various places throughout the record. For ease of reference, the Court will cite to this deposition as the "Owen Dep." and include the document number where the specific excerpt is located in the record.

Bank services the Note and Mortgage.  <u>See</u> Motion for Summary Judgment at 3, ¶ 1 (citing Owen Aff. ¶ 5, Ex. A); Response to MSJ at 5, ¶ 1.  When Finster stopped making the required payments on the Note and Mortgage, U.S. Bank filed a foreclosure action in Florida state court against her.  <u>See</u> Owen Aff. ¶ 7.  Finster obtained legal representation from Alliance Legal Group and instructed U.S. Bank to direct all communications to her attorneys.  <u>Id.</u> ¶ 8.  On July 19, 2013, U.S. Bank obtained a final judgment of foreclosure on the property and the court set a judicial sale date of November 21, 2013.  <u>Id.</u> ¶ 9.  However, prior to the sale, Finster submitted a loan modification application to U.S. Bank, and in a letter dated September 30, 2013, U.S. Bank responded that she "may be eligible" for a loan modification.  <u>Id.</u> ¶¶ 10-11, Ex. C.  The September 30, 2013 letter instructed Finster to begin making payments at a specified amount for a three-month "trial period," and explained that upon receipt of the first trial period payment, U.S. Bank would suspend foreclosure.  <u>Id.</u>, Ex. C.  In addition, the letter stated that:

> After all trial period payments are timely made and you have submitted all the required documents, your mortgage would then be permanently modified.  (Your existing loan and loan requirements remain in effect and unchanged during the trial period.)  If each payment is not received by U.S. Bank Home Mortgage in the month in which is due [sic], this offer will end and your loan will not be modified under the Making Home Affordable program.

<u>Id.</u>, Ex. C.  U.S. Bank attached a list of "Frequently Asked Questions," to the letter which included the following:

> Q. When will I know if my loan can be modified permanently . . . ?
> Once you make all of your trial period payments on time, we will send you a Loan Modification Agreement detailing the terms of the modified loan.  The Loan Modification Agreement will become effective once you and we have signed it.

Id., Ex. C at 4.  This section further instructed that: "With a Fannie Mae Loan Modification, you still have an opportunity to modify your loan provided you successfully complete a trial period," and "Your loan will not be permanently modified until you successfully complete the Trial Period Plan and you enter into a Loan Modification Agreement."  Id., Ex. C at 3.

Finster accepted this offer and began making monthly trial payments.  See Owen Aff. ¶ 8.  Finster made all of the required trial payments.  See Response to MSJ, Ex. C: Owen Dep. (Doc. 69-3) at 8.  Although the parties were unable to cancel the foreclosure sale and the property was sold, U.S. Bank thereafter dismissed the foreclosure action in order to "allow the Trial Plan to continue and allow [Finster] to attempt to obtain a loan modification."  See Owen Aff. ¶ 14.  U.S. Bank ultimately determined that Finster was "eligible for a permanent loan modification."  Id. ¶ 15.  In a letter to Finster dated February 6, 2014, U.S. Bank stated: "We have processed your Loan Modification request.  This letter will provide you with the information and instructions you need to modify your mortgage. We have enclosed two copies of a Loan Modification agreement.   Instructions for completing these agreements appear below."  Id. ¶ 16, Ex. D.  The letter instructed as follows:

1. All borrowers listed on the enclosed Loan Modification Agreement must sign the agreement and the signatures must be notarized.

   Please note: The original agreement must have original signatures *as they are typed* and must be signed in the presence of a notary public.  You should make a photocopy of the original agreement after it has been signed and keep for your records.

2. Return to the address below, BOTH signed and notarized originals of the Loan Modification Agreement and $0.00 by February 16, 2014.

Id., Ex. D.  U.S. Bank enclosed with this letter two copies of a permanent "Loan Modification Agreement (Mortgage)" for Finster to sign and return.  Id. ¶ 16, Ex D (the Loan Modification

Agreement).  Significantly, "[t]he loan modification documents had physical 'Sign & Date' and 'Notarize' stickers attached to it to ensure signed [sic] and notarized the correct pages. Further, [the] cover letter accompanying the documents had a blue and red U.S. Bank Home Mortgage logo in the top left corner."  Id.[5]

However, contrary to the instructions in the letter, Finster did not return the executed originals of the Loan Modification Agreement.  Rather, she signed copies of the originals, with images of the "Sign & Date" and "Notarize" stickers copied onto the documents, and returned those documents to U.S. Bank.  See Owen Aff. ¶ 18, Ex. E.  Because of the embedded images of the stickers, U.S. Bank determined that it was unable to record the documents and thus, could not finalize the loan modification.  Id. ¶ 19.  As such, U.S. Bank did not execute the improperly signed Loan Modification Agreement.  Id.  On March 17, 2014, U.S. Bank sent to Finster's counsel, Alliance Legal Group, by overnight Federal Express, a second set of loan modification documents for Finster to sign.  Id. ¶ 20; Owen Dep. (Doc. 59-1) at 12.  However, U.S. Bank did not include any correspondence explaining why it had re-sent the documents or the error that had occurred with the previous documents.  See Owen Dep. (Doc. 59-1) at 13.  Instead, a representative from U.S. Bank placed two telephone calls to Alliance Legal Group on March 26, 2014, and April 16, 2014, to discuss the new documents and advise Alliance as to the issue with the previous documents.  See Owen Aff. ¶ 21; Owen Dep. (Doc. 59-1) at 12.  No one at Alliance

---

[5] Finster argues that "it is impossible to tell from the referenced PDF document whether stickers referenced by the affiant were physically attached, or if the document was sent to [Finster] with the imagines [sic] already imbedded."  See Response to MSJ at 6.  Indeed, she alleges in her Third Amended Complaint and Jury Demand (Doc. 48; Amended Complaint) that she "believes the permanent loan modification documents were sent to her with the images already embedded."  See Amended Complaint ¶ 16.  However, Finster fails to present any evidence to support this "belief," and U.S. Bank has now come forward with evidence to the contrary in the form of Owen's sworn affidavit.  See Owen Aff. ¶ 16.  At this summary judgment stage of the proceedings, Finster must "go beyond the pleadings and by her own affidavits" demonstrate a genuine issue for trial on this point, and she has failed to do so.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

answered the calls, and although the representative left recorded messages, no one ever returned the calls.  See Owen Aff. ¶ 21; Owen Dep. (Doc. 59-1) at 12.  Finster's counsel, David Hicks, of Alliance Legal Group, asserts that "Alliance Legal Group has no record of receiving any telephone call or telephone message from [U.S. Bank] that indicated a problem with Bleu Finster's loan modification."  See Response to MSJ, Ex. A: Affidavit of David C. Hicks (Hicks Aff.) ¶ 3.[6]

---

[6] In paragraph 18 of the Motion for Summary Judgment, U.S. Bank cites to the affidavit of Shanan Owen and states that U.S. Bank "placed two calls to Alliance on March 26, 2014, and April 16, 2014, to confer with Alliance about the new loan modification documents.  Alliance did not answer the calls so U.S. Bank left several messages.  Alliance did not return U.S. Bank's calls."  See Motion for Summary Judgment at 6.  In her Response, Finster maintains that the assertions made in that paragraph are "[d]isputed" and cites to the affidavit of her attorney, David Hicks, who states that Alliance Legal Group has no record of any calls or messages indicating a problem with the loan modification.  See Response to MSJ at 6.  Finster's position that these facts are disputed is surprising given that, at an earlier stage in these proceedings, her counsel argued to the Court that:

> In the case at bar, U.S. Bank's corporate representative described its efforts to communicate with Plaintiff's counsel concerning the asserted clerical errors in the loan modification during U.S. Bank's Rule 30(b)(6) corporate representative deposition in this case.  It is undisputed that these efforts were limited to leaving voice mail message [sic] for one of Plaintiff's counsel's non-attorney employees and sending a second set of loan modification documents to Plaintiff's counsel . . . .  Thus, the nature and extent of U.S. Bank's efforts to communicate the asserted deficiencies in the loan modification documents is not even in dispute in this case.

See Plaintiff Bleu Finster's Response in Opposition to Defendant U.S. Bank National Association's Motion to Compel the Deposition of One of the Two Law Firms Representing Her in this Action (Doc. 59; Response to Motion to Compel) at 3 (emphasis added); see also id. at 8 ("There is no dispute that U.S. Bank's efforts were limited to leaving voice messages without actually speaking to anyone . . . .").  The same attorney who signed the Response to Motion to Compel, also signed Finster's Response to MSJ in which counsel now represents that these are disputed facts.  Thus, it appears Finster did not dispute these facts when it advanced her position in opposing U.S. Bank's request to depose her counsel, but does dispute these facts when it serves her argument on summary judgment.  The Court will not countenance such gamesmanship, and thus accepts that U.S. Bank did place two calls to Alliance Legal Group and left voicemails seeking to follow up on the second set of loan modification documents.

Regardless, Hicks' carefully worded affidavit does not actually deny that these calls were made or that Alliance received the calls, only that Alliance Law Group has no record of calls "indicat[ing] a problem with Bleu Finster's loan modification."  See Hicks Aff. ¶ 3 (emphasis added).  Hicks does not explain what records he reviewed to make this determination, or whether Alliance Legal Group keeps such records.  Moreover, Owen testified at her deposition that the calls were placed to Renee Cook at Alliance Legal Group.  See Owen Dep. (Doc. 59-1) at 12.  Thus, it is unclear how Hicks would have any personal knowledge of the existence or non-existence of phone calls to Cook.  Moreover, the Hicks Affidavit does not address whether Alliance did receive some calls or messages from U.S. Bank, just not messages which Alliance understood to "indicate a problem" with the loan modification.

Notably, Finster's counsel sent a notice of error letter to U.S. Bank on April 14, 2015, and attached several pages of U.S. Bank's system notes as evidence of the actions that U.S. Bank took before it denied

U.S. Bank's loss mitigation records, which are maintained in the ordinary course of U.S. Bank's business practices, reflect that Finster contacted U.S. Bank by email on April 28, 2014, to inquire when her online account would be active to accept payments.  <u>See</u> Owen Aff. ¶ 22, Ex. F.  Although U.S. Bank has not provided a copy of its actual response, the loss mitigation record dated April 28, 2014, indicates that U.S. Bank took the following action:

> Sent reply via MAP shared email to Mtgr/Adv online acct will not be avail until mod finalized/Adv 2nd set of mod docs sent on 3/17 to be signed and returned by 3/27/Have not rcvd yet and file getting ready to be denied/Adv if still wanting mod needs to send in docs ASAP or contact office if not rcvd.

<u>See</u> Owen Aff. ¶ 22, Ex. F.  However, Finster avers that she has

> absolutely no recollection of having received that email, or any other correspondence or communication, concerning any problem with the loan modification documents I executed and returned to U.S. Bank.  If I had received any indication that there was any problem with these documents, I would have taken it seriously and made a diligent effort to correct any deficiency.

<u>See</u> Response to MSJ, Ex. B: Affidavit of Bleu Finster (Finster Aff.) ¶ 4.  Finster further states that she reviewed her email account and was unable to locate any email messages sent by U.S. Bank on April 28, 2014.  <u>Id.</u> ¶ 5.  Thus, viewing the evidence in the light most favorable to Finster for purposes of summary judgment, the Court accepts that this email was never sent.

Nonetheless, because U.S. Bank never received properly executed originals of the Loan Modification Agreement, U.S. Bank denied Finster the loan modification.  <u>See</u> Owen

---

Finster's loan modification.  <u>See</u> Stiff Aff., Ex. E: April 14, 2015 Notice of Error, Exs. B-G.  Upon review of those records, the Court observes that these system notes include entries supporting U.S. Bank's position that it called Alliance Legal Group on March 26, 2014, and April 16, 2014.  <u>See id.</u>, Ex. E: April 14, 2015 Notice of Error, Ex. F.  Specifically, entries on March 26, 2014, state: "RMRVW: Follow up call to ATP Renee Cook to advise the final terms have been stated and to see if Mort has any ?'s or concerns/will monitor," and on the next line, "Tel Agent      LMTC Recorder."  <u>See id.</u>  An April 16, 2014 entry also reads: "Tel Agent LMTC Recorder."  <u>Id.</u>, Ex. E: April 14, 2015 Notice of Error, Ex. E.

Aff. ¶ 24.  In this regard, U.S. Bank maintains that it sent a letter dated April 29, 2014, to Finster via Alliance Legal Group, stating that: "You have previously been approved to participate in a Loss Mitigation Program, however you failed to comply with the terms and conditions of that program."  See Owen Aff. ¶ 25, Ex. G.  U.S. Bank attached to the letter a Loss Mitigation Review Determination Summary which stated in pertinent part that she was not approved for a standard modification because: "The signed agreements were not returned to our office by the deadline provided."  Id., Ex. G.  Although the letter did not mention the clerical defects with the documents that Finster did sign, it did explain that Finster was entitled to an appeal of the determination and set forth the relevant deadlines and procedures for an appeal.  Id., Ex. G.  Finster did not appeal this determination.  See id. ¶ 23.[7]

---

[7] In her Response, Finster indicates that the existence of this letter is disputed in that "Alliance Legal Group expressly denies receiving the document referenced in Paragraph 22" of the Motion for Summary Judgment. See Response to MSJ at 7.  In support, Finster cites to the Hicks Affidavit which states only that there is "no record of receiving any document or letter purporting to indicate a problem with the referenced loan modification."  See Hicks Aff. ¶ 4.  As with the telephone calls, Hicks does not explain what records he reviewed to draw this conclusion, or whether Alliance Legal Group maintains records of the letters and documents it receives.  See generally Hicks Aff.  Also, as with the phone calls, the system notes attached to Finster's April 14, 2015 Notice of Error letter include the following entry on April 29, 2014: "DM650 LM Summary Package         Letter Sent."  See Stiff Aff., Ex. E: April 14, 2015 Notice of Error, Ex. G.  Notably, the existence of a "record" of this letter is not a material issue.

It also bears observing, again, that counsel for Finster's representations to the Court have not been entirely consistent and forthcoming.  In Finster's response to U.S. Bank's motion to strike the Hicks Affidavit, Finster argues that "U.S. Bank has recently attempted to contradict its own testimony by asserting in support of its summary judgment motion that it is 'undisputed' that U.S. Bank did send a letter to Mr. Hicks on April 22nd, 2014. . . . In response to U.S. Bank's efforts to contradict its own deposition testimony in its summary judgment motion, Mr. Hicks has submitted a letter where he denies having ever received the letter U.S. Bank claims it sent on April 22nd, 2014."  See Plaintiff Bleu Finster's Response in Opposition to Defendant U.S. Bank National Association's Motion to Strike Affidavit of David Hicks (Doc. 75) at 3 (emphasis added) (citing Hicks Aff.).  However, this argument misrepresents U.S. Bank's assertion and the prior testimony of its corporate representative.  The Motion for Summary Judgment asserts that "[o]n April 29, 2014, U.S. Bank sent Plaintiff via Alliance a letter explaining that Plaintiff had not been approved for the loan modification because '[t]he signed agreements were not returned to our office by the deadline provided.'"  See Motion for Summary Judgment at 7 (emphasis added).  U.S. Bank attaches a copy of this letter to the Owen Affidavit. See Owen Aff., Ex. G.  This assertion is consistent with the deposition testimony of U.S. Bank's corporate representative who testified that: "[w]e just sent the denial letter that states, on 4/18, that she failed to return the signed modification agreement.  That was the written correspondence from the loss mitigation area."  See Owen Dep. (Doc. 59-1) at 14.  The Motion for Summary Judgment nowhere references an April 22, 2014

Notably, Finster continued making her trial modification payments after the end of the trial period, but U.S. Bank rejected those payments.  See Owen Dep. (Doc. 69-3) at 8. Despite her continuing payments, because U.S. Bank had denied the loan modification, it considered Finster to be delinquent on her mortgage payments and referred her loan to foreclosure.  See Owen Aff. ¶¶ 27-28.  On August 7, 2014, Alliance Legal Group, on behalf of Finster, sent a letter titled "Notice of Error under 12 CFR Section 1024.35" to U.S. Bank. See Motion, Ex. 2: Affidavit of Eric Stiff (Doc. 65-2; Stiff Aff.) ¶ 5, Ex. A.  The letter identified two purported errors:

> Specifically, you have moved for foreclosure judgment or order of sale or conducted a sale while the borrower is performing under an agreement on a loss mitigation option, in violation of Section 1024.41(g)(3).

> Additionally, you have wrongfully terminated the borrower's loan modification while they were submitting the payments that were owed pursuant to the plan within the deadline established, without providing them a reasonable period of time to fulfill any remaining requirements of the servicer, in violation of §1024.41(e)(ii).  The borrower was making timely payments which were rejected by you only because the permanent modification documents were returned to you with "sticky notes" attached to them.

---

letter, and thus to the extent the Hicks Affidavit is intended to rebut the existence of an April 22, 2014 letter, it has no bearing on whether U.S. Bank sent the April 29, 2014 denial letter.

Moreover, the fact that U.S. Bank's reference to the April 29, 2014 letter is consistent with the deposition testimony of its corporate representative is of particular significance given Finster's prior position in her Response to the Motion to Compel.  Although not specifically referencing this particular letter or portion of the corporate representative's testimony, Finster's arguments at that time indicated that she was not disputing the corporate representative's testimony regarding U.S. Bank's attempts to communicate with Alliance Legal Group prior to Finster's Notices of Error.  See Response to Motion to Compel at 9 ("U.S. Bank has incorporated email correspondence into its motion demonstrating that Plaintiff's counsel attempted to explain that the communication that predated Plaintiff's RESPA correspondence was not implicated in this action and that U.S. Bank's corporate representative's testimony established the nature and extent of the communications concerning the asserted clerical errors.").  While the Court recognizes that the April 29, 2014 letter does not specifically mention clerical errors, it did notify Finster that her loan modification was denied due to a failure to return the signed agreements, and advised of her right to appeal this decision, which she did not pursue.  Regardless, whether or not U.S. Bank sent the April 29, 2014 denial letter has no bearing on the outcome of this case.  The Court takes this opportunity to remind counsel for Finster that while he no doubt seeks to zealously represent his client, he must not do so at the cost of his duty of candor to the Court.

See Stiff Aff., Ex. A.  U.S. Bank responded to Finster's letter on September 23, 2014, with a finding that no error occurred.  Id., Ex. B.  U.S. Bank explained that it had received the executed Loan Modification Agreement on February 19, 2014, but the modification documents were resent on March 17, 2014, "because the sign and date arrows were copied on to the modification documents, which is against recording guidelines."  See id., Ex. B.  The letter states that a U.S. Bank representative called Finster's counsel on March 26, 2014, and April 16, 2014.  Id., Ex. B.  In this response letter, U.S. Bank informed Finster through her counsel that when it "did not recieve [sic] a correctly executed set of modification documents, [U.S. Bank] issued a Loss Mitigation Review Summary Package Explanation on April 29, 2014, informing you that you were no longer approved for a Standard Modification."  Id., Ex. B.[8]  U.S. Bank further explained that "due to stringent restrictions placed on us by your investor, we must be diligent in following all established regulations and guidelines regarding our line of business.  We have to have correctly executed modification documents before system changes can begin on an account."  Id., Ex. B.  The letter informed Finster of her right to request the documents supporting this decision, provided her with the address to send such a request, and included a telephone number to call with any questions.  Id., Ex. B.

On approximately February 2, 2015, Finster sent a second "Notice of Error" letter. See id., Ex. C.  This letter faulted U.S. Bank for failing to timely apply several of Finster's mortgage payments to the principal, interest and escrow.  Id., Ex. C.  Once again, U.S. Bank responded that it had investigated the matter and found no error.  See id., Ex. D.  In

---

[8] Significantly, although Finster sent two additional Notices of Error after receiving this response from U.S. Bank, none of those letters disputed U.S. Bank's assertion that it called and left messages with Alliance on two occasions, or denied receiving the April 29, 2014 denial letter.

its March 2, 2015 response letter, U.S. Bank explained that its handling of the payments was appropriate because four of the payments were held in suspense while the loan was active in loss mitigation, and the last payment was rejected because the modification was denied.  See id., Ex. D.  Finster sent a final "Notice of Error" letter on April 14, 2015.  See id., Ex. E.  In this letter, Finster asserts that U.S. Bank "wrongly repudiated [her] permanent loan modification agreement."  Id.  The letter states:

> [Finster] entered into a permanent loan modification with U.S. Bank after successfully completing a trial loan modification payment period.  According to the signed, notarized, and executed loan modification agreement the new effective date of the loan modification was February 1, 2014 and the first payment was due March 1, 2014.  [Finster] provided U.S. Bank with the signed, notarized, and executed loan modification agreement and faithfully paid every month until U.S. Bank rejected the borrower's payments and began the foreclosure proceedings.

See id., Ex. E.  Although Finster acknowledged U.S. Bank's prior explanation that it rejected the Loan Modification Agreement because of the arrow stickers that were copied in the margin, Finster argued that "[t]he stickers in no way blocked any of the lines, pertinent information or signatures.  They were simply noticeable in some of the margins."  Id., Ex. E.  Finster maintained that "[a]t no point during the entire time after the loan modification was sent to you, was there ever written communication to the borrower or her attorney that there was an issue with the permanent loan modification documents."  Id., Ex. E.

Finster noted that U.S. Bank did resend loan modification documents to her attorney, but stated that U.S. Bank sent the documents "without any written communication as to why the documents were being resent.  The permanent modification agreement arrived without a cover sheet, without a new due date, and without any indication as to why they were being resent."  Id., Ex. E.  Finster also informed U.S. Bank that she had

contacted the Bank regarding her frustration over her inability to pay her bill online, and still was not informed of a problem with her loan modification documents.  Id., Ex. E. According to Finster's letter, U.S. Bank was required to notify Finster in writing whether her application was complete or incomplete, and if incomplete, inform Finster of the additional documents needed and the applicable deadline.  Id., Ex. E.  Finster cited 12 C.F.R. § 1024.41(2)(B) as authority for this proposition and argued that "[a]t no point was [Finster] ever noticed in writing that the permanent modification was incomplete or needed to be re-done.  It further was not communicated in writing by which date the documents were due." Id., Ex. E.  U.S. Bank responded to this third Notice of Error with a letter dated June 1, 2015, which again found no error.  Id., Ex. F.  This letter set forth the same explanation and case history as the previous letters.  Id., Ex. F.

As stated above, because U.S. Bank rejected the Loan Modification Agreement, and Finster did not otherwise bring her loan current, U.S. Bank referred Finster's loan to foreclosure.  See Owen Aff. ¶ 28.  On August 21, 2015, Finster initiated the instant action against U.S. Bank.  See Complaint and Jury Demand (Doc. 1).  In her Third Amended Complaint and Jury Demand (Doc. 48; Amended Complaint), filed on July 26, 2016, Finster asserts claims against U.S. Bank pursuant to the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., and the Florida Consumer Collection Practices Act (FCCPA), section 559.72 of the Florida Statutes.  In May 2016, with this lawsuit ongoing, U.S. Bank allowed Finster to "re-execute the loan modification, waived the late fees and costs [Finster] had accumulated since February 2014, dismissed the Second Foreclosure Action, and brought [Finster's] loan current under the original terms of the loan modification."  See Owen Aff. ¶ 29.

### III.    RESPA

#### A. Applicable Law

RESPA is "a remedial consumer-protection statute," and as such, it "should be construed liberally in order to best serve Congress' intent." See Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1244 (11th Cir. 2016); see also McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010).  As relevant to this action, RESPA prohibits servicers of a federally related mortgage from failing to "take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." See 12 U.S.C. § 2605(k)(1)(C).  If a servicer fails to comply with any provision of § 2605, the borrower may sue for damages under RESPA. See 12 U.S.C. § 2605(f).  Count I of the Amended Complaint alleges a violation of RESPA premised on Regulation X, 12 C.F.R. part 1024, which implements RESPA and took effect on January 10, 2014.  See Amended Complaint at 7-8.

Regulation X requires mortgage servicers to investigate and respond to any written notice from a borrower that asserts an "error" related to the servicing of her mortgage. See 12 C.F.R. § 1024.35(a)-(e); see also Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1007 (11th Cir. 2016).  Although the types of errors subject to this provision are limited to certain identified categories, these covered errors are "broadly defined," see Nunez v. J.P. Morgan Chase Bank, N.A., 648 F. App'x 905, 907 (11th Cir. 2016) (citing 12 C.F.R. § 1024.35(b)), and the Regulation includes a "residual category for '[a]ny other error relating to the servicing of a borrower's mortgage loan,'" id. (quoting 12 C.F.R. § 1024.35(b)(11)).[9]

---

[9] U.S. Bank contends that Finster's RESPA claim fails because the handling of a loan modification does not fall within the definition of "servicing" errors to which RESPA applies.  See Motion for Summary Judgment at

In response to a notice of error, absent exceptions inapplicable here, "the servicer must either correct the errors the borrower identified and notify the borrower in writing or, after a reasonable investigation, notify the borrower in writing that it has determined no error occurred and explain the basis for its decision."  Lage, 839 F.3d at 1007 (citing 12 C.F.R. § 1025.35(e)(1)(i)); see also 12 U.S.C. § 2605(e)(2).  Generally, a servicer has thirty days to respond to a notice of error.  12 C.F.R. § 1025.35(e)(3)(i)(C).

### B. Discussion

As described above, Finster sent U.S. Bank three notices of error, see Stiff Aff., Exs. A, C, E (the Notices of Error), to which U.S. Bank responded in writing that, after a reasonable investigation, it had found no error, see Stiff Aff., Exs. B, D, F.  Regulation X generally requires a servicer to respond to a notice of error by either correcting the identified error or

> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

See 12 C.F.R. § 1024.35(e)(1)(i)(B).  Finster does not argue that U.S. Bank's letters failed to contain the requisite information.  Indeed, as described above, U.S. Bank's response letters included: a finding that no error occurred, its reasons for finding no error, a statement of her right to request the documents on which U.S. Bank relied, information on how to request those documents, and a telephone number for obtaining further assistance.  See

---

16-18 (citing 12 U.S.C. § 2605(i)(3)).  The Court need not address this argument because the Court finds for the reasons set forth below that regardless, U.S. Bank complied with RESPA.

Stiff Aff., Exs. B, D, F.[10]  As such, U.S. Bank's responses appear to fully comply with the requirements of RESPA.  See 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. § 1024.35(e)(1)(i)(B); cf. Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1135 (11th Cir. 2014) (analyzing a RESPA claim prior to Regulation X and finding a response was sufficient where it explained what happened to the payment in question and provided contact information, although the borrower was unsatisfied with the answer); see also Williams v. Wells Fargo Bank, N.A., 560 F. App'x 233, 241-42 (5th Cir. 2014).

Nonetheless, Finster maintains that U.S. Bank violated RESPA because it failed to conduct a reasonable investigation.  Notably, Finster does not contend that U.S. Bank's stated explanation for the denial was false or inaccurate, or that U.S. Bank did, in fact, receive properly executed Loan Modification Agreements.  Finster presents no evidence from which a fact-finder could conclude that U.S. Bank did not conduct a reasonable investigation, such as evidence that U.S. Bank's responses failed to address the substance of Finster's Notices of Error, gave contradictory explanations, or were factually incorrect.[11] See Hernandez v. J.P. Morgan Chase Bank N.A., CASE NO. 14-24254-CIV-GOODMAN, 2015 WL 9302827, at *6-9 (S.D. Fla. Dec. 21, 2015) ("It is evident . . . that [defendant] did in fact perform an investigation because the letter contains specific information relevant to [p]laintiff's loan . . . ."); Moore v. Seterus, Inc., No. 15-0612-KD-M, 2016 WL 7374651, at

---

[10] U.S. Bank's response to the third Notice of Error does not actually include a paragraph disclosing Finster's right to request documents and how to do so, see Stiff Aff., Ex. F, but Finster does not challenge this omission and the absence of this information is not significant under the circumstances.  See 12 C.F.R. § 1024.35(g)(1)(i).

[11] Although U.S. Bank's responses to the Notices of Error mention the phone calls and April 29, 2014 letter that Finster now denies receiving, even accepting Finster's contention that these communications never occurred, this is not evidence of a lack of reasonable investigation.  U.S. Bank's statements regarding those communications are supported by its business records, see Stiff Aff., Ex. E, and none of Finster's Notices of Error challenged those assertions or denied receiving those communications.  See supra nn. 6-8.

\*13-14 (S.D. Ala. Dec. 16, 2016); <u>cf.</u> <u>Nunez</u>, 648 F. App'x at 909-10 (reversing dismissal of RESPA claim where servicer's responses to notice of error contradicted the history of the loan, failed to acknowledge its error, and were "unreasonable assessments of the situation"); <u>Hernandez v. J.P. Morgan Chase Bank N.A.</u>, 2016 WL 3982496, at \*6-7 (S.D. Fla. July 22, 2016) (denying summary judgment to servicer where borrower presented evidence contradicting the factual assertions in the servicer's response to his notice of error); <u>Wilson v. Bank of Am., N.A.</u>, 48 F. Supp. 3d 787, 804-05 (E.D. Pa. 2014) (finding plausible claim for failure to conduct a reasonable investigation where the servicer's responses gave contradictory explanations).  Rather, Finster's contention that U.S. Bank failed to conduct a reasonable investigation is premised entirely on her disagreement with U.S. Bank's determination that no error occurred.  <u>See</u> Response to MSJ at 3.

According to Finster, U.S. Bank erred in denying her loan modification because, pursuant to an addendum to the Loan Modification Agreement, the Errors and Omissions Compliance Agreement, U.S. Bank had a contractual obligation to provide Finster with written notice and an opportunity to correct the clerical error.  <u>See</u> Response to MSJ at 3; <u>see also</u> Loan Modification Agreement at 10.[12]  Finster's theory appears to be that a reasonable investigation would have uncovered this error and therefore, because U.S. Bank found no error, it could not have performed a reasonable investigation.  <u>Id.</u> at 17-18. Notably, although Finster's first Notice of Error maintained that U.S. Bank must give Finster an opportunity to correct the clerical error, and her final Notice of Error asserted that U.S.

---

[12] Although U.S. Bank never signed the Loan Modification Agreement, Finster contends that the Agreement was properly executed by virtue of U.S. Bank's signature on prior letters referencing the Loan Modification Agreement.  <u>See</u> Response to MSJ at 9-10.  The Court discusses this argument further in Part IV of this Order.

Bank had an obligation to notify Finster in writing of the clerical error, in both letters Finster cited to Regulation X as the source of this obligation.[13]  At no point, in any of her Notices of Error, did Finster mention a purported <u>contractual</u> obligation to provide her with written notice and an opportunity to correct the error.  Thus, it is difficult to discern how U.S. Bank's failure to consider or address this provision of the Loan Modification Agreement in its responses to Finster could demonstrate a lack of proper investigation.  Regardless, mere disagreement with the outcome of a reasonable investigation does not establish a RESPA violation.  "The statute does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons." <u>See</u> <u>Whittaker v. Wells Fargo Bank, N.A.</u>, No. 6:12-cv-98-Orl-28GJK, 2014 WL 5426497, at *8 (M.D. Fla. Oct. 23, 2014) (citing <u>Bates</u>, 768 F.3d at 1135).[14]  The goal of RESPA is "transparency and facilitation of communication," and U.S. Bank's responses provided Finster with a complete, responsive, and factually-supported explanation of what led to the denial of her loan modification.  <u>See</u> <u>Bates</u>, 768 F.3d at 1135.  As such, no reasonable fact-

---

[13] Specifically, Finster argued in her Notices of Error that U.S. Bank violated various provisions of 12 C.F.R. § 1024.41 by failing to provide her with notice in writing of the errors and an opportunity to correct the problem before denying her loan modification.  <u>See</u> Stiff Aff., Exs. A, E.  However, in this lawsuit, Finster appears to have abandoned her position that 12 C.F.R. § 1024.41 imposed those obligations on U.S. Bank.  She does not premise her RESPA claim or any of her arguments on § 1024.41, and cites solely to a provision of the Loan Modification Agreement as the source of U.S. Bank's purported obligation to provide her with written notice and an opportunity to correct the clerical errors.  As such, the Court will not consider whether U.S. Bank violated § 1024.41.

[14] Although pre-dating Regulation X's addition of the arguably more burdensome "reasonable" investigation requirement, <u>see</u> <u>Wilson</u>, 48 F. Supp. 3d at 803-05, the Court finds the analysis in both <u>Whittaker</u> and <u>Jones v. Select Portfolio Servicing, Inc.</u> to be persuasive to the extent these courts explained that where a borrower disputes a servicer's reasonable interpretation of a contract, that error is properly the subject of a breach of contract claim, not RESPA.  <u>See</u> <u>Whittaker</u>, 2014 WL 5426497, at *8; <u>Jones</u>, No. 08-972, 2008 WL 1829035, at *9 (E.D. Pa. Apr. 22, 2008).  Likewise, here, Finster's claim sounds in contract—whether U.S. Bank was bound by the Loan Modification Agreement, despite refusing to sign it, and if so, whether it violated a provision of that Agreement by failing to send Finster written notice of the clerical error.  Although Finster initially brought breach of contract claims in this action, <u>see</u> Complaint and Jury Demand (Doc. 1) at 5-9, she later dropped those claims.

finder could conclude on the record before the Court that U.S. Bank failed to conduct a reasonable investigation.[15]   Accordingly, U.S. Bank's Motion for Summary Judgment is due to be granted as to Count I of the Amended Complaint.

## IV.   FCCPA

### A.  Applicable Law

In Count II of the Amended Complaint, Finster asserts a claim against U.S. Bank pursuant to section 559.72(9) of the FCCPA.  See Amended Complaint at 9-10.   This statute provides that: "In collecting consumer debts, no person shall: . . . (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."  See Fla. Stat. § 559.72(9) (emphasis added).   Because there is no contention that the debt is not legitimate, to prevail on her FCCPA claim Finster must show that U.S. Bank: (1) asserted a legal right that did not exist, and (2) had actual knowledge that the right did not exist.  See Read v. MFP, Inc., 85 So. 3d 1151, 1155 (Fla. 2d Dist. Ct. App. 2012) (quoting Pollock v. Bay Area Credit Serv., LLC, No. 08-61101-CIV, 2009 WL 2475167, at *9 (S. D. Fla. Aug. 13, 2009)); Bentley v. Bank of Am., N.A., 773 F. Supp. 2d 1367, 1372-73 (S.D. Fla. Mar. 23, 2011).   A debt collector asserts a legal right that does not exist where, for example, it has:

> garnished wages in violation of the statutory requirements for garnishment, or actively attempted to collect a debt when the debt collector knew that the consumer had filed for bankruptcy protection, or attempted to collect postjudgment interest in an amount greater than the statutory rate, or attempted to collect a debt that had already been satisfied.

---

[15] The Court notes that as Finster has consented to a bench trial in this matter, the undersigned would have been the fact-finder had this claim survived summary judgment.  See Order (Doc. 78), entered January 17, 2017.

See Read, 85 So. 3d at 1155 (collecting cases) (internal citations omitted).  In addition, because the statute includes the word "knows," a defendant debt collector must act with "actual knowledge of the impropriety or overreach of a claim."  See Lamb v. Household Fin. Corp. III, (In re Lamb), 409 B.R. 534, 541 (Bankr. N.D. Fla. 2009); see also LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) ("Section 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed actual knowledge that the threatened means of enforcing the debt was unavailable." (citing McCorriston v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008)).  Indeed, "[c]onstructive knowledge is not sufficient," McCorriston, 536 F. Supp. 2d at 1279 (citing Williams v. Streeps Music Co., Inc., 333 So. 2d 65, 67 (Fla. 4th Dist. Ct. App. 1976)), and a plaintiff may not recover "if the creditor merely should have known the debt was not legitimate," see Schauer v. Morse Operations, Inc., 5 So. 3d 2, 5-6 (Fla. 4th Dist. Ct. App. 2009) (emphasis added).

### B. Discussion

Finster contends that U.S. Bank violated the FCCPA when it pursued foreclosure against her, knowing that she was offered a loan modification, had accepted that offer, and had "complied with all of her obligations thereunder."  See Response to MTD at 3; Response to MSJ at 3 ("[E]ven after [U.S. Bank] was placed on notice of the [the error in its handling of the loan modification], it continued to prosecute the foreclosure action against [Finster], thereby knowingly asserting a right that did not exist in violation of the FCCPA.").  Finster maintains that summary judgment on her FCCPA claim is inappropriate because an issue of fact remains as to "whether [U.S. Bank] knowingly pursued foreclosure against [Finster] despite its knowledge that she complied with her obligations under the

loan modification agreement." <u>See</u> Response to MSJ at 3.  U.S. Bank maintains that it is entitled to summary judgment because the Loan Modification Agreement is not enforceable under Florida's banking statute of frauds, and regardless, it did not act with "actual knowledge." <u>See</u> Summary Judgment Motion at 11-14, 21-23.[16]

It is undisputed that, prior to the events of this lawsuit, Finster defaulted on her mortgage and U.S. Bank lawfully obtained a foreclosure judgment against her. Nonetheless, Finster maintains that by initiating new foreclosure proceedings in 2015, U.S. Bank attempted to enforce a legal right that did not exist because Finster was performing under the Loan Modification Agreement.[17]   Although not clearly articulated, Finster's argument appears to be that U.S. Bank could not deny the permanent loan modification based on the clerical errors without providing her written notice and an opportunity to correct the errors.  Thus, her argument goes, because U.S. Bank improperly denied her the loan modification, it sought to enforce a legal right that did not exist when it pursued

---

[16] In the Amended Complaint, Finster alleges that U.S. Bank violated section 559.72(9) in the following ways:

> by attempting to repudiate the loan modification without notifying Plaintiff of the asserted clerical errors that it contends rendered the permanent loan modification agreement un-recordable or attempting to obtain corrected documents, demanding payments of amounts that were not due because there was a performing loan modification, rejecting Plaintiff's timely tender of payments due pursuant to the loan modification, and pursuing the still pending foreclosure litigation despite Plaintiff's performance under the loan modification agreement.

<u>See</u> Amended Complaint ¶ 48.  However, in her Response to MSJ, Finster's theory appears to be more limited—that U.S. Bank violated the FCCPA by continuing to prosecute the foreclosure action.  <u>See</u> Response to MSJ at 3.  The Court questions whether merely pursuing the foreclosure action constitutes debt collection activity within the purview of the FCCPA. <u>See</u> <u>Trent v. Mortg. Elec. Reg. Sys., Inc.</u>, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007).  Nonetheless, because U.S. Bank did not raise this argument, the Court will not decide the case on this basis.

[17] Finster argues at one point that "there is no debtor/creditor relationship, and no contract, between her and [U.S. Bank]," because Fannie Mae is the actual investor on the loan.  <u>See</u> Response to MSJ at 15.  This argument is puzzling given that Finster claims a violation of the FCCPA premised on her contention that U.S. Bank entered into the Loan Modification Agreement with her.  Regardless, Finster does not dispute that, absent a valid loan modification agreement, U.S. Bank had the legal right to foreclose on the loan.

foreclosure.  The problem with this argument, however, is that the sole basis for Finster's contention that U.S. Bank improperly rejected the Loan Modification Agreement is a provision internal to the Agreement itself.  Specifically, Finster points to an addendum to the Loan Modification Agreement entitled "Errors and Omissions Compliance Agreement" as the source of U.S. Bank's obligation to provide her with written notice and time to correct the clerical errors.[18]  See Owen Aff., Ex. D: Loan Modification Agreement at 10 (Errors and Omissions Addendum).  The Court questions whether Finster's strained interpretation of this Addendum is valid, but even if correct, the Addendum is part of the Agreement that U.S. Bank refused to execute.  If unsigned, U.S. Bank is not bound by the terms of the Loan Modification Agreement it has yet to enter.  See Fla. Stat. § 687.0304(2) (the "Banking Statute of Frauds"); see Traver v. Wells Fargo Bank, N.A., No. 3:14-cv-895-J-32MCR, 2015 WL 9474612, at *3 (M.D. Fla. Dec. 29, 2015) (finding that loan modification agreements are credit agreements which must satisfy the Banking Statute of Frauds).  Thus, to the extent Finster relies on the Errors and Omissions Addendum to show that U.S. Bank improperly denied Finster the permanent loan modification, this argument is misplaced.

Finster attempts to avoid this problem by arguing that, despite its refusal to execute the Loan Modification Agreement, U.S. Bank was still bound by it.  Finster contends that U.S. Bank executed the Agreement by virtue of its signature on the September 30, 2013 trial modification offer letter, see Owen Aff., Ex. C, and the February 6, 2014 cover letter

---

[18] This provision states that: "if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender . . . ." See Errors and Omissions Addendum.  The provision further states that "[t]he Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender."  Id. Despite language which appears to obligate only the Borrower, Finster interprets this provision to mean that U.S. Bank must provide her with written notice and an opportunity to correct any clerical errors before repudiating the Loan Modification Agreement.  See Response to MSJ at 16-17.

that accompanied and referenced the Loan Modification Agreement, see Owen Aff. Ex. D. See Response to MSJ at 9-10.  In support, Finster relies on Florida law principles regarding the aggregation of writings and cites Traver, 2015 WL 9474612 at *3 (finding "the aggregation of documents potentially demonstrates the existence of an executed loan modification agreement, which allows the case to proceed").  See Response to MSJ at 9-10.  According to Finster, having entered the Loan Modification Agreement, U.S. Bank could not then "repudiate" that Agreement without complying with the Errors and Omissions Addendum.  As such, whether U.S. Bank actually had a legal right to pursue the foreclosure is contingent on whether aggregated writings principles render the Agreement enforceable against U.S. Bank, and if so whether the Errors and Omissions Addendum is correctly interpreted to require U.S. Bank to provide Finster with written notice and an opportunity to correct the clerical errors.

Upon careful consideration, the Court determines that it need not decide these contractual issues in order to resolve the FCCPA claim because, even if Finster is correct in her contractual arguments, she presents no evidence of U.S. Bank's actual knowledge as required by the FCCPA.  See Prescott v. Seterus, Inc., 194 F. Supp. 3d 1290, 1297 (S.D. Fla. 2016) ("[T]he fact that [defendant] employed faulty legal reasoning, and did not make a mere clerical mistake, clearly does not mean it knew that its reasoning was faulty, as the FCCPA requires.").  Finster insists that U.S. Bank had the requisite knowledge because it pursued foreclosure despite knowing that "she complied with her obligations under the loan modification agreement."  See Response to MSJ at 3.  But the record before the Court establishes no such knowledge.  Rather, it is undisputed that Finster did not actually comply with those obligations in that she did not return the signed original

agreements as U.S. Bank required, and U.S. Bank therefore rejected the Loan Modification Agreement and pursued foreclosure.  If U.S. Bank was wrong in doing so, as Finster contends based on the theories stated above, then to establish actual knowledge, she must present evidence that U.S. Bank actually <u>knew</u> that it was bound by the Loan Modification Agreement, and <u>knew</u> that the Errors and Omissions Addendum required it to send Finster written notice of the clerical error before repudiating the Agreement.  <u>See</u> <u>Prescott</u>, 194 F. Supp. 3d at 1297 (finding no recovery under the FCCPA where, although creditor improperly demanded estimated legal fees, debtor failed to demonstrate that the creditor had "actual knowledge that it could not charge these estimated fees"); <u>McCorriston</u>, 536 F. Supp. 2d at 1279 ("Plaintiff has not established that Defendants had actual knowledge that [the creditor's] claim was time-barred when they sent the [collection] letter."); <u>Groves v. U.S. Bank</u>, No. 8:10-CV-2665-T-17TGW, 2011 WL 2192821, at *3-4 (M.D. Fla. June 6, 2011) ("It is not clear how [defendant] could have actual knowledge that the debt [it] was seeking to collect was not legitimate, if [defendant] has not obtained a deficiency judgment, and [plaintiff's] claims for breach of contract and for violation of [the plaintiff's rights as a defaulted party in a secured transaction] have not been adjudicated.");

Finster notified U.S. Bank that she disagreed with its decision to deny the permanent loan modification, and that she believed she was entitled to written notice, but Finster never informed U.S. Bank that by virtue of its signature on prior letters, she considered the Loan Modification Agreement binding and enforceable.  Nor did Finster explain to U.S. Bank that she interpreted the Errors and Omissions Addendum to require U.S. Bank to provide her with written notice of the clerical errors before "repudiating" the agreement.  Indeed, Finster never even notified U.S. Bank that she had not received U.S. Bank's communications

Case 3:15-cv-01044-MMH-MCR   Document 82   Filed 03/28/17   Page 25 of 26 PageID 973

about the denial—namely, the two phone calls and denial letter—which U.S. Bank had mentioned in its responses to Finster's Notices of Error. At most, U.S. Bank knew that Finster disagreed with its decision to reject the loan modification. But, U.S. Bank's awareness of the existence of a dispute alone does not establish its actual knowledge that, despite its decision to deny the permanent loan modification, it nonetheless had no legal right to pursue foreclosure. See Kelly v. Davis, No. 3:10cv392-MW/EMT, 2014 WL 12515345, at *11 (N.D. Fla. July 17, 2014) ("Rather than acting with the requisite knowledge, the [defendant], at worst, is simply on notice that the assessments imposed against [plaintiff] are now being contested. The mere existence of such a dispute falls short of the statutory knowledge requirement, especially where substantial evidence tends to establish the legitimacy of the debt at issue."); see also Schauer, 5 So. 3d at 5-6 ("The fact that plaintiff asserted, when he received telephone calls from [defendant] attempting to collect the debt, that he did not owe the debt, is insufficient, in our opinion, to create an issue of fact as to his claim that [defendant] knew that the debt was not legitimate."); Arianas v. LVNV Funding LLC, 132 F. Supp. 3d 1322, 1330 (M.D. Fla. 2015). Because Finster fails to demonstrate an issue of fact regarding whether U.S. Bank knew it had no right to pursue foreclosure, the Court concludes that U.S. Bank is entitled to summary judgment on Finster's FCCPA claim as well. In light of the foregoing, it is

**ORDERED**:

1. Defendant's Motion to Dismiss Third Amended Complaint (Doc. 49) is **DENIED, as moot**.

2. Defendant's Motion to Strike Affidavit of David C. Hicks (Doc. 73) is **DENIED, as moot**.

3. Defendant's Motion for Final Summary Judgment (Doc. 65) is **GRANTED**.

4. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant U.S. Bank National Association, and against Plaintiff Bleu Finster.

5. The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot and close the file.

   **DONE AND ORDERED** in Jacksonville, Florida, this 28th day of March, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties